UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

NCRNC, LLC d/b/a NORTHEAST CENTER FOR REHABILITATION AND BRAIN INJURY,

                              *Plaintiff*,

    -against-

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the Department of Health and Human Services, and MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare & Medicaid Services,

                              *Defendants.*

**VERIFIED COMPLAINT**

Case No.: 1:25-CV-0607 (MAD/PJE)

---

Plaintiff NCRNC, LLC d/b/a Northeast Center for Rehabilitation and Brain Injury respectfully alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under the Seventh Amendment to the United States Constitution. The declaratory relief that Plaintiff seeks is available under 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57.

2. This Court has jurisdiction to order prospective relief in the form of a declaratory judgment and/or injunction against the Defendants, the Secretary of the Department of Health and Human Services and the Administrator of the Centers for Medicare & Medicaid Services, in their official capacities as officers of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) as this Court is sited in the judicial district where a substantial part of the events giving rise to Plaintiff's claims have occurred, are now occurring, or will occur in the future. Plaintiff's nursing home is situated in this district and is affected, and will continue to be affected, by the harms sought to be remedied in this action.

## NATURE OF THIS PROCEEDING

4.  In this action for declaratory and injunctive relief, Plaintiff, NCRNC, LLC, a New York limited liability company which operates a 280 bed nursing home in Lake Katrine, NY d/b/a Northeast Center for Rehabilitation and Brain Injury ("Northeast Center"), seeks an order (1) declaring unconstitutional the current process employed by the Defendant officials of the United States Department of Health and Human Services ("HHS") and Centers for Medicare & Medicaid Services ("CMS") to impose a $25,435 fine on Northeast for alleged violations of federal regulations and (2) enjoining said officials from enforcing or collecting said fine and suspending Northeast Center's Nurse Aide Training and Competency Evaluation Program ("NATCEP") based solely on said fine. The imposition of the fine violates Northeast Center's Seventh Amendment right to a jury trial before an Article III federal court to contest the alleged violation and fine.

5.  Plaintiff's claims are based on the recent landmark administrative law decision handed down by the United States Supreme Court in *SEC v. Jarkesy*, 603 U.S.109 (2024), holding that federal administrative agencies are prohibited from directly assessing civil administrative penalties via an administrative process. While there may be a "public rights" exception that might allow certain enforcement actions by federal agencies to be adjudicated in a non-Article III court, that is not the case here.

6.	Here, CMS, a sub-agency under HHS with regulatory jurisdiction over Medicare and entities that participate in that program like Northeast Center, made a determination that Northeast Center had violated one of HHS's regulations, 42 C.F.R. § 483.25(d)(2), which requires nursing homes that receive federal monies under Medicare to ensure that each nursing home resident receives adequate supervision and assistance devices to prevent injury. CMS alleged that one of Northeast Center's employees, a certified nurse aide, negligently attempted, without seeking the assistance of another staff member, to transfer a disabled resident back to her bed after having administered her a shower. CMS claims that this constituted a violation of 42 C.F.R. § 483.25, and in accordance with the provisions of sections 1819(h) and 1919(h) of the Social Security Act and regulations adopted by HHS at 42 C.F.R. § 488.430, it advised Northeast Center by letter dated April 28, 2025 that it was imposing a civil monetary penalty in the amount of $25,435 due and payable by May 14, 2025, and that, in addition, because the fine exceeded $12,924, Northeast Center's ability to operate a Nurse Aide Training and Competency Evaluation Program ("NATCEP") pursuant to federal law and regulations was being suspended until November 20,2026. CMS demanded the immediate payment and imposed the fine although acknowledging that Northeast Center was entitled to contest the charge before an Administrative Law Judge in a hearing to be held at some future date in accordance with the procedures outlined in Part 498 of Title 42 the Code of Federal Regulations.

7.	This case fits comfortably within the parameters of the Supreme Court's decision in *SEC v. Jarkesy*. Here a federal administrative agency is seeking to impose a substantial fine on a regulated entity without affording the entity a jury trial as required by the Seventh Amendment to the United States Constitution for alleged negligent actions that are akin to a classic common

3

law cause of action for negligence that existed at the time of the adoption of the Bill of Rights. Accordingly, the Seventh Amendment right to a jury trial applies, and as a result, the fine may not be imposed on Northeast Center and the resultant suspension of Northeast Center's nurse aide training program, which was based solely on the amount of the fine, is illegal and Defendants should, therefore, be enjoined from imposing either the fine or the suspension of the nurse aide training program.

## PARTIES

### Plaintiff

8. Plaintiff, NCRNC, LLC d/b/a NORTHEAST CENTER FOR REHABILITATION AND BRAIN INJURY, operates a nursing home licensed by the State of New York under the name Northeast Center for Rehabilitation and Brain Injury, located at 300 Grant Ave, Lake Katrine, NY 12449.

### Defendants

9. ROBERT F. KENNEDY JR., is the Secretary of the Department of Health and Human Services, and he is being sued in his official capacity. HHS is the parent agency of the Centers for Medicare & Medicaid Services. HHS also operates the Departmental Appeals Board which handles administrative appeals of sanctions issued by CMS.

10. MEHMET OZ, is the Administrator of the Centers for Medicare & Medicaid Services, and he is being sued in his official capacity. CMS is the federal agency which imposed the Civil Monetary Penalty and suspension from the Nurse Aide Training and Competency

Evaluation Program on Northeast Center pursuant to its authority to administer the Medicare program.

## BACKGROUND

11. The Medicare Program, established pursuant to Title XVIII of the federal Social Security Act, 42 U.S.C. § 1395, *et seq.*, is a federal health insurance program that provides benefits to most U.S. citizens age 65 or older as well as younger persons afflicted with certain chronic conditions such as end stage renal disease or ALS.

12. Nursing homes, like Plaintiff Northeast Center, that participate in the Medicare program must meet certain standards set forth in both law and regulations adopted by CMS, and they are reimbursed by CMS for the care and services they provide to eligible Medicare patients.

13. Nursing homes are surveyed periodically by state and/or federal health officials to ensure that they comply with applicable law and regulations. If deficiencies are found, nursing homes may be subject to certain sanctions imposed by CMS, including civil monetary penalties. *See* 42 U.S.C. § 1395i-3(h); 42 C.F.R. § 488.430.

14. On June 27, 2024, an incident occurred at Northeast Center in which a resident being transferred to her bed following a shower fell to the floor and sustained a head injury that required stitches but did not cause permanent harm.

15. Although the resident's plan of care required a 2-person assist for transfers, a certified nurse aide had attempted to transfer the resident alone.

16. The certified nurse aide was immediately suspended and terminated the following day for failure to follow the resident's plan of care.

17. The incident was promptly self-reported by Northeast Center to the New York State

Department of Health on June 28, 2024.  *See* Exhibit A.

18. A survey of Northeast Center was conducted by the New York State Department of Health on November 13, 2024 through November 21, 2024.

19. In a statement of deficiencies following this survey, Northeast Center was cited, on the basis of the June 27, 2024 incident, for a violation of regulations requiring that residents receive adequate supervision and assistance to prevent accidents.  The relevant portion of the statement of deficiencies is attached as Exhibit B.

20. By a letter dated January 22, 2025, CMS informed Northeast Center that, as a result of the June 27, 2024 incident, it was not in substantial compliance with federal requirements of participation in Medicare. This letter is attached as Exhibit C.

21. As a result, CMS imposed on Northeast Center a Civil Monetary Penalty of $25,435.

22. In addition, CMS imposed a two-year suspension of Northeast Center's operation of a Nurse Aide Training and Competency Evaluation Program ("NATCEP"), effective November 21, 2024 through November 20, 2026.

23. Pursuant to the Social Security Act, the NATCEP suspension was automatically triggered by the imposition of a Civil Monetary Penalty in excess of $13,343.

24. NATCEP is a federal program established pursuant to §§ 1819 and 1919 of the Social Security Act (42 U.S.C. §§ 1395i-3 and 1396r) and regulations promulgated by CMS (42 C.F.R. § 483.150, *et seq.*).  It gives nursing homes the opportunity to conduct educational programs to enable individuals to become certified nurse aides.  In order to be able to operate such programs, the nursing home must maintain its own compliance with federal regulations, including avoiding

civil monetary penalties above a certain threshold.

25. Under federal regulations, Northeast Center has the right to administratively appeal the imposition of a Civil Monetary Penalty before an Administrative Law Judge, but there is no right to adjudication in an Article III court.

26. By a letter to the DHS Departmental Appeals Board, dated March 17, 2025, Northeast Center requested a hearing to challenge the imposition of the Civil Monetary Penalty and suspension of its NATCEP. This letter is attached as Exhibit D.

27. In that letter, Northeast Center not only contested its liability on the merits, but also argued that under the decision of the United States Supreme Court in *SEC v. Jarkesy*, 603 U.S. 109 (2024), the administrative imposition of a civil monetary fine violates the right to a jury trial under the Seventh Amendment to the United States Constitution.

28. CMS regulations require Northeast Center to make a payment of the full Civil Monetary Penalty prior to pursuing the administrative appeal.

29. By letter dated April 28, 2025, CMS advised Northeast Center that unless the full Civil Monetary Penalty is paid by May 14, 2025, CMS would "immediately" begin recouping the funds from future Medicare reimbursements otherwise due to Northeast Center from claims submitted for payment. That letter is attached as Exhibit E.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST, SEPARATE AND INDEPENDENT CLAIM FOR RELIEF, PLAINTIFF ALLEGES AS FOLLOWS:

30. Plaintiff repeats and realleges each and every allegation heretofore set forth in this Complaint.

31.   The Civil Monetary Penalty imposed by Defendants mirrors a common-law legal claim for negligence in that it seeks to impose liability on Northeast Center as a result of injuries caused to a third party as a result of errors by Northeast Center's employees.

32.   The Civil Monetary Penalty further mirrors a common-law legal claim for negligence because CMS seeks to hold Northeast Center liable for the acts of one of its employees without any finding of culpability by Northeast Center's management or owners, analogous to the common-law doctrine of respondeat superior.

33.   The Civil Monetary Penalty is legal rather than equitable in nature.  It is not restitution or disgorgement, but rather is imposed as a punitive fine paid to the government.

34.   The Civil Monetary Penalty does not fall within the "public rights" exception described in *SEC v. Jarkesy*, 603 U.S. 109 (2024).  It does not involve matters traditionally resolved outside of Article III courts, but instead regulates interactions between private parties resulting in injury, the traditional domain of common law tort actions.

35.   Loss of money through a penalty is a private-rights dispute that would have been tried at law in 1791 when the Bill of Rights and, in particular, the Seventh Amendment, was added to the United States Constitution.

36.   Defendants' imposition of the Civil Monetary Penalty without the right of trial by jury violates the Seventh Amendment of the United States Constitution.

**AS AND FOR A SECOND, SEPARATE AND
INDEPENDENT CLAIM FOR RELIEF, PLAINTIFF
ALLEGES AS FOLLOWS:**

37.   Plaintiff repeats and realleges each and every allegation heretofore set forth in this Complaint.

38. Northeast Center's two-year suspension from provision of a Nurse Aide Training and Competency Evaluation Program (NATCEP) is automatically triggered solely and exclusively by the imposition of the Civil Monetary Penalty.

39. This suspension does not depend on any other determination by Defendants, such as a finding that Northeast Center is not competent to conduct nurse aide training or that suspending Northeast Center from providing nurse aide training would benefit the public in any way.

40. If the imposition of the Civil Monetary Penalty without the right to a jury trial is an unconstitutional violation of the Seventh Amendment, then the imposition of additional punishments solely on the basis of unconstitutional Civil Monetary Penalty is similarly unconstitutional.

41. The nurse aide training program is an important pipeline by which Northeast Center obtains nurse aides to staff its facility. Without the ability to provide nurse aide training, Northeast Center will incur substantial additional expense identifying and attracting qualified individuals to staff its nurse aide positions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

1. Declaring that the challenged imposition of a Civil Monetary Penalty on Northeast Center by CMS is unconstitutional, in violation of the Seventh Amendment to the United States Constitution;

      2.      Permanently enjoining Defendants, their agents, and/or successors in office from recouping funds from Northeast Center's Medicare payments or otherwise seeking to enforce the Civil Monetary Penalty against Northeast Center;

      3.      Permanently enjoining Defendants, their agents, and/or successors in office from imposing any other penalty on Northeast Center that is triggered in any respect by the imposition of a Civil Monetary Penalty; and

      4.      Awarding Plaintiff the costs and disbursements of this proceeding, and such other and different relief as the Court deems just and appropriate.

DATED:    May 13, 2025        O'CONNELL AND ARONOWITZ

                          By:   *s/Cornelius D. Murray*
                                  Cornelius D. Murray, Esq.
                                  Bar Roll No. 505329
                                  *Attorney for Plaintiff*
                                  54 State Street, 9th Floor
                                  Albany, NY 12207
                                  (518) 462-5601
                                  cmurray@oalaw.com

## VERIFICATION

I, Efraim Steif, declare as follows:

1. I am the managing member of Plaintiff, NCRNC, LLC, a New York limited liability company, and I am a citizen of the United States.

2. I have read the foregoing Verified Complaint in this proceeding and have personal knowledge of the facts related therein and, pursuant to 18 U.S.C. § 1746, I hereby verify under penalty of perjury that the facts stated in the Complaint are true and correct.

Executed on May 13, 2025.

_____
Efraim Steif

11