**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**NCRNC, LLC *d/b/a* NORTHEAST CENTER FOR REHABILITATION AND BRAIN INJURY,**

**Plaintiff,**

**vs.** **1:25-cv-607 (MAD/PJE)**

**ROBERT F. KENNEDY, JR., *in his official capacity as Secretary of the Department of Health and Human Services*, and MEHMET OZ, *in his official capacity as Administrator of the Centers for Medicare & Medicaid Services*,**

**Defendants.**

---


**APPEARANCES:** **OF COUNSEL:**

**O'CONNELL AND ARONOWITZ** **CORNELIUS D. MURRAY, ESQ.**
**MICHAEL Y. HAWRYLCHAK, ESQ.**
54 State Street
9th Floor
Albany, New York 12207-2501
Attorneys for Plaintiff

**OFFICE OF THE UNITED STATES ATTORNEY** **CHRISTOPHER R. MORAN, AUSA**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Attorneys for Defendants


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this action on May 13, 2025, seeking declaratory and injunctive relief, arguing that Defendants' imposition of a fine violates its right to a jury trial under the Seventh Amendment of the United States Constitution. *See* Dkt. No. 1. The Court granted

Plaintiff's request for a temporary restraining order on May 13, 2025, and scheduled this matter for a hearing on May 28, 2025. *See* Dkt. No. 7.

Currently before the Court is Plaintiff's motion for a preliminary injunction, Defendants' opposition thereto, and Plaintiff's reply. *See* Dkt. Nos. 2, 11, 14. For the reasons that follow, Plaintiff's motion is denied.

## II. BACKGROUND

### A. Parties

Plaintiff, NCRNC, LLC, is a New York limited liability company which operates a 280 bed nursing home licensed by the State of New York, and d/b/a Northeast Center for Rehabilitation and Brain Injury ("Plaintiff" or "Northeast Center"), located at 300 Grant Avenue, Lake Katrine, New York 12449. *See* Dkt. No. 1 at ¶ 8.

Defendant Robert F. Kennedy, Jr. is the Secretary of the Department of Health and Human Services ("HHS"), and is being sued in his official capacity. *See id.* at ¶ 9. HHS is the parent agency of the Centers for Medicare & Medicaid Services ("CMS"). *See id.* HHS also operates the Departmental Appeals Board (the "Board") which handles administrative appeals of sanctions issued by CMS. *See id.*

Defendant Mehmet Oz is the Administrator of the Centers for Medicare & Medicaid Services, and he is being sued in his official capacity. *See id.* at ¶ 10. CMS is the federal agency which imposed on Plaintiff a Civil Monetary Penalty ("CMP") and suspension from the Nurse Aide Training and Competency Evaluation Program ("NATCEP") pursuant to its authority to administer the Medicare program. *See id.* "NATCEP is a federal program established pursuant to Sections 1819 and 1919 of the Social Security Act (42 U.S.C. §§ 1395i-3 and 1396r) and regulations promulgated by CMS (42 C.F.R. § 483.150, *et seq.*)." *Id.* at ¶ 24. "It gives nursing

homes the opportunity to conduct educational programs to enable individuals to become certified nurse aides." *Id.* "In order to be able to operate such programs, the nursing home must maintain its own compliance with federal regulations, including avoiding CMPs above a certain threshold." *Id.*

**B. Nature of this Proceeding**

In this action for declaratory and injunctive relief, Plaintiff seeks an order (1) declaring unconstitutional the current process employed by the Defendant officials of HHS and CMS which resulted in the imposition of a $25,435 fine on Northeast Center for alleged violations of federal regulations; and (2) enjoining those officials from enforcing or collecting the fine and suspending Plaintiff's participation in the NATCEP based solely on said fine. *See* Dkt. No. 1 at ¶ 4. Plaintiff alleges that the imposition of the fine violates its Seventh Amendment right to a jury trial before an Article III federal court to contest the alleged fine and regulatory violation. *See id.*

Plaintiff's claims are based on the recent administrative law decision handed down by the United States Supreme Court in *SEC v. Jarkesy*, 603 U.S. 109 (2024), holding that federal administrative agencies are prohibited from directly assessing civil administrative penalties through an administrative process. *See* Dkt. No. 1 at ¶ 5. Plaintiff contends that, to the extent that there is a "public rights" exception that may allow certain enforcement actions by federal agencies to be adjudicated in a non-Article III court, that is not the case here. *See id.*

Here, CMS, a sub-agency of HHS with regulatory jurisdiction over Medicare and entities that participate in that program (like Plaintiff), made a determination that Plaintiff had violated one of HHS's regulations—42 C.F.R. § 483.25(d)(2). The regulation requires nursing homes that receive federal monies under Medicare to ensure that each nursing home resident receives adequate supervision and assistive devices to prevent injury. *See id.* at ¶ 6. CMS alleged that one

of Plaintiff's employees, a certified nurse aide, negligently attempted, without seeking the assistance of another staff member, to transfer a disabled resident back to her bed after having administered her a shower. *See id.* CMS claimed that this constituted a violation of 42 C.F.R. § 483.25, and in accordance with the provisions of Sections 1819(h) and 1919(h) of the Social Security Act ("SSA") and regulations adopted by HHS at 42 C.F.R. § 488.430, it advised Plaintiff by letter dated April 28, 2025, that it was imposing a civil monetary penalty in the amount of $25,435 due and payable by May 14, 2025. *See id.* Additionally, because the fine exceeded $12,924, CMS informed Plaintiff that its ability to operate a NATCEP pursuant to federal law and regulations was being suspended until November 20, 2026. *See id.* CMS demanded the immediate payment and imposed the fine but acknowledged that Plaintiff was entitled to contest the charge before an Administrative Law Judge ("ALJ") in accordance with the procedures outlined in Part 498 of Title 42 of the Code of Federal Regulations. *See id.*

**C. Factual Background**

The Medicare Program, established pursuant to Title XVIII of the SSA, 42 U.S.C. § 1395, *et seq.*, is a federal health insurance program that provides benefits to most United States citizens 65 years or older as well as younger persons afflicted with certain chronic conditions such as end stage renal disease or ALS. *See* Dkt. No. 1 at ¶ 11. Nursing homes, like Plaintiff, that participate in the Medicare program must meet certain standards set forth in both law and regulations adopted by CMS, and they are reimbursed by CMS for the care and services they provide to eligible Medicare patients. *See id.* at ¶ 12.

Nursing homes are surveyed periodically by state and/or federal health officials to ensure that they comply with applicable law and regulations. *See id.* at ¶ 13. If deficiencies are found, nursing homes may be subject to certain sanctions imposed by CMS, including civil monetary

penalties. *See* 42 U.S.C. § 1395i-3(h); 42 C.F.R. § 488.430.

On June 27, 2024, an incident occurred at Northeast Center in which a resident being transferred to her bed following a shower fell to the floor and sustained a head injury that required stitches but did not cause permanent harm. *See* Dkt. No. 1 at ¶ 14. Although the resident's plan of care required a two-person assist for transfers, a certified nurse aide attempted to transfer the resident alone. *See id.* at ¶ 15. The certified nurse aide was suspended immediately and terminated the following day for failure to follow the resident's plan of care. *See id.* at ¶ 16. The incident was self-reported by Plaintiff to the New York State Department of Health the next day, on June 28, 2024. *See id.* at ¶ 17.

The New York State Department of Health surveyed Plaintiff beginning November 13 through 21, 2024. *See id.* at ¶ 18. In a statement of deficiencies following this survey, Plaintiff was cited, on the basis of the June 27, 2024, incident, for a violation of regulations requiring that residents receive adequate supervision and assistance to prevent accidents. *See id.* at ¶ 19. By letter dated January 22, 2025, CMS informed Plaintiff that, as a result of the incident, it was not in substantial compliance with federal requirements for participation in Medicare. *See id.* at ¶ 20. As a result, CMS imposed on Plaintiff a CMP of $25,435. *See id.* at ¶ 21. In addition, CMS imposed a two-year suspension of Plaintiff's operation of an NATCEP, effective November 21, 2024, through November 20, 2026. *See id.* at ¶ 22. Pursuant to the SSA, the NATCEP suspension was automatically triggered by the imposition of a CMP in excess of $13,343. *See id.* at ¶ 23.

Under federal regulations, Plaintiff has the right to administratively appeal the imposition of a CMP before an Administrative Law Judge, but there is no right to adjudication in an Article III court. *See* Dkt. No. 1 at ¶ 25. By letter to the Board dated March 17, 2025, Plaintiff requested

a hearing to challenge the imposition of the CMP and suspension of its NATCEP. *See id.* at ¶ 26. In that letter, Plaintiff not only contested its liability on the merits, but also argued that under the decision of the United States Supreme Court in *SEC v. Jarkesy*, 603 U.S. 109 (2024), the administrative imposition of a civil monetary penalty violates its right to a jury trial under the Seventh Amendment to the United States Constitution. *See id.* at ¶ 27.

CMS regulations require Plaintiff to pay the full CMP prior to pursuing an administrative appeal. *See id.* at ¶ 28. By letter dated April 28, 2025, CMS advised Plaintiff that unless the full CMP is paid by May 14, 2025, CMS would "immediately" begin recouping the funds from future Medicare reimbursements otherwise due to Plaintiff from claims submitted for payment. *See id.* at ¶ 29.

## III. DISCUSSION

### A. Standard of Review

"'A preliminary injunction is an extraordinary and drastic remedy' and 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (quoting *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59, 79 (2d Cir. 2024)). "To obtain a preliminary injunction, a party must show '(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.'" *Id.* (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

"'The irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction' and 'must therefore be satisfied before the other requirements

for an injunction can be considered.'" *Id.* (quoting *State Farm*, 120 F.4th at 80). Where, as here, the movant seeks to enjoin government action "taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous 'serious questions' standard but should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." *Hunter v. Cortland Hous. Auth.*, 714 F. Supp. 3d 46, 56 (N.D.N.Y. 2024) (quoting *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)); *see also Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014).

**B. Likelihood of Success**

28 U.S.C. § 1331 confers district court's with original jurisdiction over civil actions arising under the Constitution and federal laws. Although the default rule generally authorizes federal district courts to consider challenges to the lawfulness of administrative proceedings, Congress can "preclude district courts from exercising jurisdiction over challenges to federal agency action" by substituting "an alternative scheme of review." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). Sometimes Congress does so explicitly. *See id.* Other times, it does so implicitly by "specifying a different method to resolve claims about agency action," typically by providing for "review in a court of appeals following the agency's own review process." *Id.*

The statute at issue here follows this latter path. *See* 42 U.S.C. § 1395i-3(h)(2)(B)(ii) (incorporating 42 U.S.C. § 1320a-7a(e) which provides that "[a]ny person adversely affected by a determination of the Secretary under this section may obtain a review of such determination in the United States Court of Appeals for the circuit in which the person resides"). HHS, as approved by Congress, has established a regulatory scheme for the administrative appeal of CMS-imposed

penalties. *See* 42 C.F.R. § 498, *et seq.* As explained by Defendants, "a facility may appeal an 'initial determination' by CMS, including a 'finding of noncompliance leading to the imposition of enforcement actions' specified in the regulations." Dkt. No. 11 at 9 (quoting 42 C.F.R. § 498.3(b)(13)). "The facility is then entitled to a *de novo* hearing before an . . . ALJ[], at which it may present evidence and witnesses. A facility that is dissatisfied with an ALJ's determination may appeal that decision to the" Board. *Id.* (citing 42 C.F.R. § 498.80). "The Board's decision is the 'final decision' of the Secretary, which may be appealed either to a federal appeals court (when civil monetary penalties are imposed) or to a federal district court (in the case of all other remedies)." *Id.* (citing 42 C.F.R. §§ 498.5, 498.90; 42 U.S.C. §§ 1395cc(h)(1)(A), 1395i-3(h)(2)(B)(ii)). Specifically, section 498.5 of the federal regulations governs "Appeal Rights," and states that "[a]ny provider or prospective provider dissatisfied with a hearing decision may request Departmental Appeals Board review, and has a right to seek judicial review of the Board's decision. 42 C.F.R. § 498.5(c); *c.f.* 42 U.S.C. § 1320a-7a(e) ("Any person adversely affected by a determination of the Secretary under this section may obtain a review of such determination in the United States Court of Appeals for the circuit in which the person resides").

Here, Plaintiff has availed itself of the administrative appeal process and requested a hearing before an ALJ. *See* Dkt. No. 1 at ¶ 26. By requesting the hearing, the NATCEP suspension was stayed until, and unless, there is a final administrative decision upholding the CMP. *See* Dkt. No. 1-3 at 5. On May 7, 2025, CMS personnel advised Plaintiff's counsel that they had "removed the NATCEP ban in our system." Dkt. No. 11-1 at ¶¶ 15-16. On May 15, 2025, Plaintiff's counsel confirmed that "we are aware that the nurse training can continue to operate for now." Dkt. No. 11-2 at ¶ 7. CMS also advised Plaintiff that it intended to deduct the CMP from ongoing Medicare payments owed to Plaintiff, which would then be temporarily

placed into an interest-bearing escrow account pending the outcome of the appeal. *See generally* 42 C.F.R. § 488.431. As these facts make clear, Plaintiff is currently availing itself of an "alternative scheme of review" relating to the imposition of the CMP. *Axon Enter.*, 598 U.S. at 185.

Even when Congress has implicitly divested the district courts of jurisdiction by providing for direct review in the courts of appeals, this allocation of jurisdiction "does not necessarily extend to every claim concerning agency action." *Id.* It extends only to claims "'of the type Congress intended to be reviewed within [the] statutory structure.'" *Id.* at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208 (1994)). Three considerations, referred to as the *Thunder Basin* factors, help courts determine whether a claim is subject to the presumptive "statutory structure" for direct appellate review or whether it falls outside this scheme. *See id.*

The first *Thunder Basin* factor asks whether "precluding district court jurisdiction [would] 'foreclose all meaningful review' of the claim?" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212-13). The second factor asks whether "the claim [is] 'wholly collateral to [the] statute's review provisions?" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). And the third factor asks whether "the claim [is] 'outside the agency's expertise'?" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). But the Supreme Court has cautioned that "the ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question"—and the *Thunder Basin* factors are meant simply to "aid in th[at] inquiry." *Id.*; *see also Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018) (cautioning that these factors are "general guideposts" that should not be "applied pursuant to any strict mathematical formula"). "When the answer to all three questions is yes, '[the district court] presume[s] that Congress does not intend to limit jurisdiction.'" *Axon Enter.*, 598 U.S. at 186 (quoting *Free*

*Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)).

***1. First Thunder Basin Factor***

The first *Thunder Basin* factor asks whether "precluding district court jurisdiction [would] 'foreclose all meaningful review' of the claim." *Axon Enter.*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212-13). Although the ALJ (and arguably the DAB) will lack authority to resolve Plaintiff's Seventh Amendment defense, if aggrieved by the ALJ's decision, Plaintiff will be able to raise the defense in a petition for review in the Second Circuit. *See* 42 U.S.C. § 1395i-3(h)(2)(B)(ii). Using that process, Plaintiff can secure "meaningful review" of the agency's decision, including by arguing that the administrative process was defective because it deprived Plaintiff of its Seventh Amendment right (if any) to a jury trial. *See Thunder Basin*, 510 U.S. at 212-13.

In general, review of agency decisions must await finality; that is, in at least most circumstances, a regulated party has no right to obtain judicial review of the relevant rules and procedures until after the agency has rendered a decision. *See Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003), *as amended* (July 24, 2003) ("The general rule is that 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself'") (quoting *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995)). That rule applies with particular force where, as here, the regulated party will suffer no significant adverse consequences—beyond the cost of participating in the administrative proceeding—until after the decision is final and until after the regulated party has obtained "meaningful review" of the agency's decision.[1] If Plaintiff is unsuccessful before the DAB, it may

---

[1] The Court acknowledges that, absent injunctive relief, the CMP at issue will be recouped from ongoing Medicare payments owed to Plaintiff and temporarily placed into an interest-
(continued...)

appeal to the Second Circuit. If the Second Circuit agrees with Plaintiff that the Seventh Amendment applies to CMPs imposed by HHS and CMS in public health enforcement proceedings, like this one, Plaintiff can ask the court to vacate the civil penalty order, thereby redressing any harm before it becomes final. Indeed, that is precisely what happened in *Jarkesy v. SEC*, 34 F.4th 446, 454, 466 (5th Cir. 2022), the case that Plaintiff invokes in support of its Seventh Amendment argument. *See Jarkesy*, 603 U.S. at 119. There, an ALJ issued a decision that was reviewed by the Securities and Exchange Commission, which was the "final order" the plaintiffs sought to be reviewed by the Fifth Circuit. *See id.*

As explained by another district court, "[i]t is thus unsurprising that every district court that has considered the question post-*Jarkesy* has held that the relevant statutory procedures for challenging final administrative orders provide a sufficient opportunity for 'meaningful review' of any Seventh Amendment defense." *Vape Central Grp., LLC v. U.S. Food and Drug Admin.*, No. 24-cv-3354, 2025 WL 637416 (D.D.C. Feb. 27, 2025) (citing *VHS Acquisition Subsidiary No. 7. v. NLRB*, No. 1:24-cv-2577, 2024 WL 4817175, *3 (D.D.C. Nov. 17, 2024) (holding that "[t]he first *Thunder Basin* factor . . . points towards a lack of district court jurisdiction" because the plaintiff "can still receive 'meaningful review' of its Seventh Amendment challenge" in the "circuit court"); *Blankenship v. Fin. Indus. Regul. Auth.*, No. 24-cv-3003, 2024 WL 4043442, *2, n.4 (E.D. Pa. Sept. 4, 2024) (noting that "*Jarkesy* came up on direct review, not collateral attack" and concluding that "a finding of no jurisdiction in this court will not foreclose all 'meaningful' judicial review" of the plaintiff's Seventh Amendment claim); *Nexstar Media, Inc. Grp. v. NLRB*,

---

[1](...continued)
bearing escrow account pending the outcome of the appeal. *See* 42 C.F.R. § 488.431. Should Plaintiff succeed with its administrative appeal, this money will be returned to Plaintiff. Additionally, the NATCEP suspension is stayed during the administrative appeal.

No. 4:24-cv-1415, 2024 WL 4127090, *5 (N.D. Ohio Aug. 26, 2024) (determining that the first "*Thunder Basin* factor weigh[ed] against jurisdiction" of the plaintiff's Seventh Amendment claim because that claim could "be raised in the Court of Appeals which will have authority to modify" or "set [ ] aside" the agency's ruling)).

Plaintiff nonetheless disagrees, arguing that it needs to obtain judicial review now to avoid the irreparable harm it will suffer if forced to participate in an "illegitimate proceeding" before an ALJ when it is "entitled to a trial by jury in an Article III court." Dkt. No. 14 at 11. Plaintiff contends that being required to participate in such a constitutionally defective proceeding constitutes the type of "here-and-now injury" that justifies immediate district court review under *Axon Enterprises*. *See id.* at 10-11. But that contention misunderstands the "narrow exception to Congress's prescribed path for judicial review of agency action" that the Supreme Court recognized in *Axon*. *See Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-cv-5096, 2023 WL 7294839, *11 (D.C. Cir. May 25, 2023). The "here-and-now injury" at issue in *Axon* was not the imposition of a fine that could have been remedied on judicial review. *See Axon Enter.*, 598 U.S. at 191. Rather, it was "'being subject[ed] to 'unconstitutional agency authority'"—that is, being forced to participate in "a 'proceeding by an unaccountable ALJ.'" *Id.* (noting that the injury was being "subject[ed] to an illegitimate proceeding, led by an illegitimate decisionmaker"). "And as to that grievance," the Supreme Court held, "the court of appeals [could] do nothing: A proceeding that has already happened cannot be undone." *Id.*

The Supreme Court in *Axon* took pains to emphasize, moreover, the limited scope of this conclusion. It did not represent a "newfound enthusiasm for interlocutory review," nor did it call into question the long-settled principle "that 'the expense and disruption' of 'protracted adjudicatory proceedings' [does] not justify immediate review." *Id.* at 192. What mattered in

*Axon* was that the challenge had nothing to do with the ultimate result of the administrative process; rather, the challenge alleged that "the entire proceeding [was] unlawful" and that subjecting the regulated party to a constitutionally "illegitimate proceeding causes [a] legal injury" that is wholly "independent of any rulings the ALJ might make." *Id.* at 182. In the Supreme Court's words, the challenge was "fundamental, even existential," and it posited "that the agencies, as currently structured, [were] unconstitutional in much of their work." *Id.* at 180.

Here, in contrast, Plaintiff does not challenge the legal authority of the ALJ to perform much of his or her work, nor does Plaintiff contend that its injury consists of being subjected to the authority of an "illegitimate decisionmaker." *See* Dkt. Nos. 1, 2-1. Rather, Plaintiff's principal complaint focuses the requirement of participating in the administrative proceeding as it relates to the CMP and its authority to impose such a CMP. *See* Dkt. No. 1. Unlike the challenge in *Axon*, Plaintiff focuses on a narrow slice of the administrative proceeding, far from raising an "existential" challenge to the administrative process. *Axon Enter.*, 598 U.S. at 180.

Juries are not necessary at every stage of an action, even when the Seventh Amendment might otherwise apply. By way of analogy, district courts frequently resolve cases at the motion to dismiss or summary judgment stages, without ever seating a jury. And that process is consistent with the Seventh Amendment, because the right to a jury trial arises only if "there are issues of fact to be determined." *In re Peterson*, 253 U.S. 300, 310 (1920). The Supreme Court has also held that "the Seventh Amendment does not require a jury trial" for "determination of a civil penalty" amount. *Tull v. United States*, 481 U.S. 412, 427 (1987). Thus, Plaintiff's Seventh Amendment claim is best characterized, not as a challenge to an "unconstitutional proceeding," but as a challenge to the ALJ's authority – if necessary – to resolve any disputed issues of fact.

Like federal district courts, ALJs may render summary decisions on issues presented at the

hearing if the evidence in the record establishes that there is no genuine issue as to any material fact. As a result, the administrative proceeding against Plaintiff could conclude without the implication of any Seventh Amendment right. *See Fid. & Deposit Co. of Md. v. United States*, 187 U.S. 315, 320 (1902). And the possibility that the relevant facts will not be disputed matters with respect to a Seventh Amendment defense; if the facts are undisputed, Plaintiff's Seventh Amendment argument fails at the outset, without requiring the Court even to consider whether the public rights doctrine applies in this context. *See Clark v. Hanley*, 89 F.4th 78, 100 (2d Cir. 2023) ("The Seventh Amendment protects the right to a jury trial only for matters at law, in contradistinction to those in equity. . . . Even then, the right to a jury trial exists ... *only* with respect to *disputed* issues of fact") (quoting *Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 819 (2d Cir. 1977), *aff'd*, 439 U.S. 322 (1979)) (additional quotations and quotation marks omitted) (emphasis added).

The Court, accordingly, concludes that the first *Thunder Basin* factor weighs heavily against immediate district court review.

***2. Second Thunder Basin Factor***

For similar reasons, the Court concludes that Plaintiff's Seventh Amendment argument is not "wholly collateral" to the statutory review scheme. *See Axon Enter.*, 598 U.S. at 184-85. The existence of some genuine dispute of material fact is a necessary prerequisite to Plaintiff's Seventh Amendment argument. Unlike *Axon*, this is not a case in which the asserted injury exists separate and apart from the specifics of the adjudicatory process; it is not a case in which the plaintiff challenges the ALJ's "power to proceed at all." *Axon Enter.*, 598 U.S. at 192. In other words, Plaintiff is objecting not to the ALJ's "power generally" but to "how that power [will be] wielded" in the context of the particular proceedings against it. *Id.* at 193. As a result, the applicability – or

inapplicability – of the Seventh Amendment is inextricably intertwined with the administrative process. If no facts relating to liability are reasonably disputed, Plaintiff's argument fails at the outset. Or, in other words, Plaintiff's Seventh Amendment argument is wrapped up in "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Id.*; *see also Avon Nursing & Rehab. v. Becerra*, 995 F.3d 305, 313 n.3 (2d Cir. 2021) ("In *Shalala v. Illinois Council on Long Term Care, Inc.*, the Supreme Court channeled constitutional and statutory challenges to a Medicare regulation, reasoning that although 'the agency might not provide a hearing for [those] particular contention[s],' the plaintiffs 'remain[ed] free,' after following the Medicare Act's administrative procedures, 'to contest in court the lawfulness of any regulation or statute upon which an agency determination depends'") (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 23 (2000)).

Because Plaintiff's Seventh Amendment argument is not "wholly collateral" to the proceeding – and, indeed, may well turn on what happens in the administrative proceeding – the second *Thunder Basin* factor also weighs heavily against immediate district court review.

***3. Third Thunder Basin Factor***

The third factor asks whether Plaintiff's challenge lies "outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212. As Plaintiff correctly observes, its "claim is wholly outside the specialized expertise of the agency." Dkt. No. 14 at 10. This question lies squarely within the judicial ken. However, framing the application of the third *Thunder Basin* factor in that limited manner risks creating a far more expansive exception to the statutory review procedures than the Supreme Court has ever embraced; most, if not all, questions of constitutional law fall outside the expertise of the administrative agencies. Instead, this factor is better understood to ask whether the challenge raises a pure question of constitutional law, "detached from 'considerations of

agency policy,'" *Axon Enter.*, 598 U.S. at 194 (quoting *Free Enter. Fund*, 561 U.S. at 491), or whether it raises a mixed question of law and fact (or policy), where agency action might shed light on the constitutional question or "'obviate the need'" for judicial review, *see id.* at 195 (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22-23 (2012)).

Here, the constitutional question—that is, whether Plaintiff is entitled to a jury trial—is intertwined with the question that is before the ALJ. Unlike *Axon*, development of the administrative record may well "'obviate the need' to address [Plaintiff's] constitutional claim." *Id.* (quotation omitted). Regardless, the agency's expertise regarding the factual disputes, if any, may play a central role in the court of appeals' ultimate resolution of the constitutional argument.

Accordingly, the third *Thunder Basin* factor weighs against immediate district court review.

The Court is convinced that the "statutory review scheme . . . reaches the claim in question," *Axon Enter.*, 598 U.S. at 185, and that Congress intended to leave challenges, like the one Plaintiff asserts, to the prescribed statutory review procedure. The statutory scheme specifically provides the "right to seek judicial review of the Board's decision." 42 C.F.R. § 498.5(a). Defendants agree that Plaintiff can appeal a decision from the Board to a federal appeals court, *see* Dkt. No. 11 at 9, but Plaintiff does not acknowledge this regulation in its complaint or motion. *See* Dkt. Nos. 1, 2-1. The letter Plaintiff received from CMS on January 22, 2025, states that "[t]he appeal rights are set forth at 42 C.F.R. § 498.5." Dkt. No. 1-3 at 6.

Accordingly, Plaintiff will be able to obtain meaningful review in the court of appeals at the conclusion of the administrative proceeding; it is not facing any "here-and-now injury" analogous to the existential challenge at issue in *Axon*; and, indeed, it is far from clear that it will even suffer a "there-and-then injury" at some later time, since Plaintiff has not identified any

genuine dispute of material fact that might, under any circumstances, support a Seventh Amendment claim. Just like a party who is aggrieved by a district court order granting partial summary judgment in favor of that party's opponent—thereby depriving the aggrieved party of a jury trial on that issue—if the record ultimately shows that the ALJ resolved a disputed issue of material fact against Plaintiff, it can raise its Seventh Amendment argument before the court of appeals.

Under these circumstances, the Court is without statutory jurisdiction (and, although the Court need not reach the question, *see U.S. ex rel. Long v. SCS Business & Tech. Inst., Inc.*, 173 F.3d 890, 893 (D.C. Cir. 1999), might also lack Article III jurisdiction). Plaintiff is therefore unlikely to succeed on the merits of its claim; and, accordingly, Plaintiff's motion for a preliminary injunction is denied.[2]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion for a preliminary injunction (Dkt. No. 2) is **DENIED**; and the Court further

**ORDERS** that the temporary restraining order entered on May 14, 2025 (Dkt. No. 7) is **DISSOLVED** as improvidently granted; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

---

[2] Because the Court concludes that Plaintiff is unlikely to succeed on the merits, it need not address the other preliminary injunction factors. *See Connecticut State Police Union v. Rovella*, 36 F.4th 54, 68 (2d Cir. 2022).

**IT IS SO ORDERED.**

Dated: May 30, 2025
Albany, New York

Mae A. D'Agostino
U.S. District Judge