UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NCRNC, LLC, *d/b/a*
NORTHEAST CENTER FOR
REHABILITATION AND BRAIN INJURY,

                        **Plaintiff,**

   vs.                                     1:25-cv-00607
                                            (MAD/PJE)

ROBERT F. KENNEDY, JR., *in his official capacity as Secretary of the Department of Health and Human Services*; and MEHMET OZ, *in his official capacity as Administrator of the Centers for Medicare & Medicaid Services*,

                        **Defendants.**

---

**APPEARANCES:**

**O'CONNELL AND ARONOWITZ**
54 State Street
9th Floor
Albany, New York 12207
*Attorneys for Plaintiff*

**OFFICE OF THE
UNITED STATES ATTORNEY**
445 Broadway, Room 218
Albany, New York 12207
*Attorneys for Defendants*

**OF COUNSEL:**

**CORNELIUS D. MURRAY, ESQ.
MICHAEL Y. HAWRYLCHAK, ESQ.**

**CHRISTOPHER ROBERT MORAN,
AUSA**

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On May 13, 2025, NCRNC, LLC ("Plaintiff" or "Northeast Center"), a New York-licensed nursing home, commenced this action against Robert F. Kennedy, Jr., in his official capacity as Secretary of the Department of Health and Human Services, and Mehmet Oz, in his official

1

capacity as Administrator of the Centers for Medicare & Medicaid Services ("Defendants"). Dkt. No. 1. Plaintiff's complaint contains two claims and seeks declaratory and injunctive relief. *Id.* First, Plaintiff challenges a monetary penalty imposed by the Centers for Medicare & Medicaid Services ("CMS") in response to Plaintiff's apparent noncompliance with federal requirements for Medicare participation. *Id.* More specifically, in light of the Supreme Court's ruling in *SEC v. Jarkesy*, 603 U.S. 109 (2024), Plaintiff alleges that imposition of the penalty without a jury trial in an Article III federal court violates the Seventh Amendment to the United States Constitution. Dkt. No. 1 at ¶¶ 4, 36. Second, Plaintiff alleges that if the monetary penalty is found unconstitutional, then additional penalties, such as CMS's simultaneous suspension of Plaintiff's Nurse Aide Training and Competency Evaluation Program ("NATCEP"), is also unconstitutional. *Id.* at ¶ 40.

On the same day that it filed the complaint, Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction preventing CMS from recouping any money from Plaintiff. Dkt. No. 2. On May 14, 2025, the Court granted a two-week TRO. Dkt. No. 7. Thereafter, the Court held a show cause hearing on May 28, 2025, and ordered that the TRO would remain in effect until the Court issued a written decision on Plaintiff's preliminary injunction motion. Dkt. No. 15. Subsequently, on May 30, 2025, the Court denied Plaintiff's request for a preliminary injunction and dissolved the TRO. Dkt. No. 17.

On July 18, 2025, Defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, failure to state a claim. Dkt. No. 22. Plaintiff responded in opposition and, in the same submission, moved for leave to amend its complaint. Dkt. No. 24. Defendants then filed a reply. Dkt. No. 25. Defendants' motion to dismiss and Plaintiff's cross-motion for leave to amend the complaint are now before the Court.

## II. BACKGROUND

For a full recitation of the relevant facts, the parties are referred to this Court's memorandum-decision and order dated May 30, 2025. Dkt. No. 17.

## III. DISCUSSION

### A.  Standards of Review

#### *1.  Subject Matter Jurisdiction: Rule 12(b)(1)*

As a threshold matter, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)); *see Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed" (citation omitted)). Federal Rule of Civil Procedure 12(b)(1) provides subject matter jurisdiction as a ground for a party's motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1). A court may also raise the issue of subject matter jurisdiction *sua sponte* at any time. *Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 700. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

#### *2.  Dismissal for Failure to State a Claim: Rule 12(b)(6)*

If the Court is satisfied that it has subject matter jurisdiction over a case, a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of the pleader's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). Although a court's review of a motion to dismiss is generally

3

limited to the facts presented in the pleading, courts may still consider documents attached to the pleading as an exhibit or incorporated by reference into the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).  A court may also consider documents that are "integral" to the pleading, even if they are not physically attached or incorporated by reference.  *See id.* (quoting *Chambers*, 282 F.3d at 152-53).  Courts must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability" generally does not meet the pleading standard.  *See id.* (quoting *Twombly*, 550 U.S. at 557).

### 3.  *Amendment of Pleadings: Rule 15(a)*

"District [c]ourts have broad discretion to grant or deny an opportunity to amend."  *See Maddox v. Fowler*, No. 5:14-CV-01068, 2015 WL 4366222, *4 (N.D.N.Y. July 16, 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Although "[t]he court should freely give leave [to amend] when justice so requires[,]" *id.* (quoting Fed. R. Civ. P. 15(a)(2)), courts can deny

4

motions to amend "if there is an 'apparent or declared reason—such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment[,]'" *id.* (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998)).  "An amendment of a pleading is considered 'futile' when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* (citation omitted).

**B.     Subject Matter Jurisdiction**

*1.  Statutory Jurisdiction*

In Defendants' motion to dismiss, their jurisdictional arguments focus primarily on the lack of statutory support for Plaintiff's claim of federal question jurisdiction.  *See* Dkt. No. 22-1 at 17-21.  This Court, in its Memorandum-Decision and Order of May 30, 2025, determined that it does not have statutory jurisdiction over this case.  Dkt. No. 17 at 17; *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000) (holding that the Medicare Act's statutorily prescribed review process superseded federal question jurisdiction in an Article III court).  Thus, insofar as Defendants argue that the Medicare statute bars this Court's jurisdiction by requiring claims to be "channel[ed] . . . through the agency directly to the courts of appeals[,]" Dkt. No. 22-1 at 17, the Court agrees.

As this Court has already recognized, "Plaintiff will be able to obtain meaningful review in the court of appeals at the conclusion of the administrative proceeding . . . ." Dkt. No. 17 at 16; *see also id.* at 7-8 (discussing the regulatory scheme that outlines the applicable review process, which includes an administrative hearing, the opportunity to appeal the administrative decision to the Departmental Appeals Board, and the opportunity for judicial review of the Board's decision).

5

The Court also previously stated that "Congress intended to leave challenges, like the one Plaintiff asserts, to the prescribed statutory review procedure." *Id.* at 16.  Accordingly, "although the ALJ [administrative law judge] (and arguably the [Board]) will lack authority to resolve Plaintiff's Seventh Amendment defense, if aggrieved by the ALJ's decision, Plaintiff will be able to raise the defense in a petition for review in the Second Circuit." *Id.* at 10 (citing 42 U.S.C. § 1395i-3(h)(2)(B)(ii)).  This Court was clear that "the constitutional question—that is, whether Plaintiff is entitled to a jury trial—is intertwined with the question that is before the ALJ." *Id.* at 16.

Now, at the motion to dismiss stage, Plaintiff maintains that federal question jurisdiction exists because Plaintiff's Seventh Amendment claims are not subject to the Medicare statute's channeling requirements.  Dkt. No. 24-1 at 6.  More specifically, Plaintiff contends that Defendants fail to afford proper deference to the Supreme Court's decision in *Axon Enters., Inc. v. FTC*, 598 U.S. 175 (2023).  Dkt. No. 24-1 at 7.  Plaintiff correctly points out that the *Axon* Court analyzed the three-factor framework set out in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), Dkt. No. 24-1 at 7, as this Court did in its earlier decision, *see* Dkt. No. 17 at 9-17.  In its *Thunder Basin* analysis, this Court emphasized:

> What mattered in *Axon* was that the challenge had nothing to do with the ultimate result of the administrative process; rather, the challenge alleged that "the entire proceeding [was] unlawful" and that subjecting the regulated party to a constitutionally "illegitimate proceeding causes [a] legal injury" that is wholly "independent of any rulings the ALJ might make."

*Id.* at 12-13 (quoting *Axon Enters., Inc.*, 598 U.S. at 182).  The Court distinguished *Axon* from Plaintiff's argument, which "does not challenge the legal authority of the ALJ to perform much of his or her work, nor . . . that [Plaintiff's] injury consists of being subjected to the authority of an 'illegitimate decisionmaker.'" *Id.* at 13 (citing Dkt. Nos. 1, 2-1).  Rather, Plaintiff's complaint

6

takes issue with the absence of a jury trial before imposition of a monetary penalty. *See* Dkt. No. 1 at ¶¶ 36, 40.

Nevertheless, Plaintiff now engages in its own *Thunder Basin* analysis and asserts that "this Court . . . relied on a narrow understanding of the constitutional right at issue . . . ." Dkt. No. 24-1 at 8-11. In its opposition papers, Plaintiff contends that "[a] hearing before an administrative law judge is just such an illegitimate proceeding if, as Northeast Center contends, it is constitutionally entitled to adjudication in an Article III court." *Id.* at 9. Likewise, Plaintiff argues that it would suffer immediate deprivation of a constitutional right "by being forced to adjudicate the charge outside the Article III courts[,]" despite the opportunity for judicial review after the administrative process concludes. *Id.* Plaintiff further asserts that its constitutional claim "is completely independent of the merits of the administrative charge" and "wholly outside the specialized expertise of the agency." *Id.* at 10-11. Ultimately, it appears Plaintiff now attempts to argue that the entire administrative appeal process—not just the imposition of the penalty without a jury trial—is unconstitutional.

The Court reads Plaintiff's opposition arguments as an attempt to substantially expand the claims made in the complaint. The complaint alleges: (1) "Defendants' imposition of the Civil Monetary Penalty without the right of trial by jury violates the Seventh Amendment of the United States Constitution"; and (2) "If the imposition of the Civil Monetary Penalty without the right to a jury trial is an unconstitutional violation of the Seventh Amendment, then the imposition of additional punishments solely on the basis of unconstitutional Civil Monetary Penalty is similarly unconstitutional." Dkt. No. 1 at ¶¶ 36, 40; *see also id.* at ¶ 4 (asking the Court to "declar[e] unconstitutional the current process . . . to impose a $25,435 fine on Northeast for alleged violations of federal regulations," but not mentioning whether the administrative appeal process

7

*after* imposition of such fines is unconstitutional).  The attorney-drafted complaint attacks the penalty and lack of automatic jury trial, not the validity of the administrative process that Plaintiff is statutorily mandated to use if it chooses to challenge the penalty.  If Plaintiff intended to challenge the entire administrative review process, it could have explicitly done so in its complaint.  The Court will not read into the complaint allegations that were not pled.

### 2. *Article III Jurisdiction and Seventh Amendment Right to a Jury Trial*

The Court now addresses Plaintiff's reliance on *Jarkesy* and its claims that the Court "misunderstands the scope of the right established by the Supreme Court" in that case.  Dkt. No. 24-1 at 10.  In the apparent absence of any material factual dispute, Plaintiff sweepingly states that "[d]enying the protection of Article III courts is a constitutional injury regardless of whether a disputed issue of fact causes the jury right to attach."  *Id.*  However, *Jarkesy* does not support this assertion.  In that case, the Supreme Court held that the SEC's imposition of civil penalties against an investment advisor and his firm for securities fraud triggered the Seventh Amendment right to a jury trial.  *See Jarkesy*, 603 U.S. at 120-21.  The Supreme Court noted that a jury trial was required because the applicable "antifraud provisions replicate common law fraud . . . ." *Id.* at 120.  The *Jarkesy* Court also recognized a "public rights" exception to Article III jurisdiction and the Seventh Amendment jury trial right.  *Id.*  The parties in the case at bar dispute whether the exception is triggered.  *See* Dkt. No. 22-1 at 23-34; Dkt. No. 24-1 at 16-19.

As this Court has already stated, "if the facts are undisputed, Plaintiff's Seventh Amendment argument fails at the outset, without requiring the Court even to consider whether the public rights doctrine applies in this context." Dkt. No. 17 at 14 (citing *Clark v. Hanley*, 89 F.4th 78, 100 (2d Cir. 2023)).  There appear to be no disputed facts.  In its complaint, Plaintiff acknowledges that one of its employees failed to follow a patient's care plan, which resulted in a

fall and injury to the patient. Dkt. No. 1 at ¶¶ 14-15. Plaintiff further states that it reported the incident to the New York State Department of Health, which issued a statement of deficiencies regarding supervision of patients. *Id.* at ¶¶ 17-19. Moreover, Plaintiff's complaint alleges that in response to the incident, CMS sent a letter informing Plaintiff of its noncompliance with Medicare participation conditions, followed by imposition of the civil monetary penalty and suspension of Plaintiff's training program. *Id.* at ¶¶ 20-23. Finally, Plaintiff acknowledges that it requested a hearing to challenge the penalty and suspension of the training program. *Id.* at ¶ 26. Defendants do not appear to contest any of these factual allegations, which are supported by exhibits to the complaint (including the self-report to the New York State Department of Health, the statement of deficiencies, the CMS letter, Plaintiff's letter requesting a hearing, and a second CMS letter acknowledging the appeal request). *See* Dkt. Nos. 1-1 to 1-5. Thus, Plaintiff's claim fails at this step, as there are no discernible factual disputes for a jury to decide.

   Even if factual disputes existed, however, the public rights exception described in *Jarkesy* bars this Court from exercising jurisdiction. Under the public rights exception, "Congress may assign the matter for decision to an agency without a jury, consistent with the Seventh Amendment." *Jarkesy*, 603 U.S. at 127. Generally, public rights "'historically could have been determined exclusively by the [executive and legislative] branches,' even when they were 'presented in such form that the judicial power [w]as capable of acting on them[.]'" *Id.* at 128 (citations omitted). Although the term "public rights" has not been explicitly defined, the *Jarkesy* Court stated that "the granting of public benefits" triggers the public rights exception. *Id.* at 130-31 (citations omitted). Elsewhere, the Supreme Court has described public rights as those "where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights[,]" expressly differentiating them from "[w]holly private tort, contract,

9

and property cases . . . ." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51 (1989) (quoting *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 458 (1977)). Phrased differently, the public rights exception "applies to matters 'arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932)).

To that end, Defendants argue that because the Supreme Court has recognized Medicare as a public benefits program, Dkt. No. 22-1 at 26 (citing *Azar v. Allina Health Servs.*, 587 U.S. 566, 569 (2019)), and because the Medicare Program provides federal funds to private nursing homes like Plaintiff, *see id.* at 28; *see also* Dkt. No. 1 at ¶ 6, the public rights exception is implicated. Defendants also argue that Medicare's conditions of participation "are an integral part of a program safeguarding public health that has no common law analogue." Dkt. No. 22-1 at 28. Plaintiff counterargues that the *Jarkesy* Court "expressly rejected the idea that claims fall outside of the Seventh Amendment's protection just because they are part of 'novel statutory regimes, so long as the claims are akin to common law claims[,]'" Dkt. No. 24-1 at 16 (quoting *Jarkesy*, 603 U.S. at 139), but also concedes that "the right to payment of government benefits is a classic public right[,]" *id.* at 17. Regardless of that concession, Plaintiff contends that the patient care mishap and monetary penalty giving rise to this matter are so similar to a private, common law negligence cause of action that the public rights exception does not apply. *See id.* at 18 ("The claim at issue in this case is the imposition of a civil monetary penalty . . . on the basis of an injury allegedly caused by Northeast Center's failure to meet the applicable standard of care"); *see also id.* at 19-20 (discussing the applicable regulations and arguing that CMS's accusations of noncompliance constitute "a common-law negligence claim in different language").

Plaintiff's argument is unavailing because, as Defendants point out, "the government is not stepping into the shoes of an aggrieved resident" to demand compensation for a negligently inflicted injury. Dkt. No. 22-1 at 31. The employee's failure to follow the patient's care plan injured the patient, not Defendants, and Plaintiff has not concretely alleged that Defendants have standing analogous to that of a negligence plaintiff. With no discernible common law counterpart, the at-issue conduct is best characterized as a monetary penalty in response to noncompliance with requirements to receive federal funding: a transaction between the government and a private party, whereby the private party receives public funds, as long as it complies with the conditions of participation. Thus, in the absence of a viable common law analogue—even assuming there remains a triable issue of fact for a jury to decide—the public rights exception discussed in *Jarkesy* applies.

Accordingly, the Court holds that Defendants' imposition of the civil monetary penalty did not trigger the Seventh Amendment right to a jury trial, and Plaintiff must follow the statutory appeals process set forth in the Medicare Act.

**C.     Plaintiff's Cross-Motion for Leave to Amend the Complaint**

In its opposition to Defendants' motion to dismiss, Plaintiff also cross-moves for leave to amend its complaint "to allege its status as a dual Medicare and Medicaid facility." Dkt. No. 24-1 at 13. Citing *Avon Nursing & Rehab. v. Becerra*, 995 F.3d 305 (2d Cir. 2021), Plaintiff argues that federal question jurisdiction is proper with respect to its status as a Medicaid facility, even if jurisdiction is barred with respect to its status as a Medicare facility. *See* Dkt. No. 24-1 at 12-15. Plaintiff takes the position that although the Medicare and Medicaid statutory regimes "mirror each other," there remains a "crucial distinction" that prevents the Medicare Act's administrative hearing requirement from applying to Medicaid organizations. *Id.* at 14. According to Plaintiff,

11

"[t]he actions taken by CMS affect Northeast Center's rights as a Medicaid provider, and it, therefore, has a right to pursue its claims in this court." *Id.* Defendants counterargue that Plaintiff misreads *Avon*, and maintain that the Medicare Act's jurisdictional rule should still control. *See* Dkt. No. 25 at 17-21.

*Avon* dealt with a challenge by nursing facilities—which participated in both Medicare and Medicaid programs—to a regulation that "permit[ted] survey teams conducting certain inspections of nursing homes not to include a registered nurse." *Avon Nursing & Rehab.*, 995 F.3d at 307. There, the Second Circuit held that the Medicare Act's claim-channeling and jurisdiction-stripping provisions did not apply, and federal question jurisdiction was proper. *Id.* In doing so, the Second Circuit noted that "[t]he Medicaid Act, unlike the Medicare Act, does not incorporate the claim-channeling and jurisdiction-stripping provisions of the Social Security Act." *Id.* at 310. Ultimately, the Second Circuit determined that the district court had jurisdiction because the "[p]laintiffs' challenge to the [regulation] . . . ha[d] an independent basis in the Medicaid Act and [was] not inextricably intertwined with a claim for benefits under the Medicare Act." *Id.* at 312. Relatedly, the Second Circuit has explained that "[t]he [Medicare] system of review applies to 'any claims in which "both the standing and substantive basis for the presentation" of the claims is' the Medicare Act and any claims that are 'inextricably intertwined with what . . . is in essence a claim for benefits.'" *Retina Grp. of New England, P.C. v. Dynasty Healthcare, LLC*, 72 F.4th 488, 492 (2d Cir. 2023) (quoting *Heckler v. Ringer*, 466 U.S. 602, 615 (1984)).

In deciding that the *Avon* plaintiffs' claims were not inextricably intertwined between Medicare and Medicaid, the Second Circuit explicitly noted that the plaintiffs "[sought] to bring a *pre-enforcement* rulemaking challenge that [did] not involve any compliance determination that

would trigger section 405(g)'s claim-channeling function." *Avon Nursing & Rehab.*, 995 F.3d at 313 (citations omitted) (emphasis added). No plaintiff in *Avon* "raised a claim for benefits or [was] otherwise subject to a noncompliance determination," and the Second Circuit determined there was "no suggestion that resolution of the legal issue . . . [would] lead to a favorable decision on any claim for benefits or challenge to a noncompliance determination." *Id.* at 314.

In the case at bar, the opposite is true. Importantly, as Defendants point out, this case involves "a pending enforcement action . . . ." Dkt. No. 25 at 20. Indeed, as discussed previously, Plaintiff has already availed itself of the Medicare Act's administrative review process, which shows that the action has passed the pre-enforcement stage. Additionally, although the CMS letter discusses both Medicare and Medicaid in its justification for imposing the penalty, *see* Dkt. No. 1-3 at 3, Plaintiff's complaint only alleges that the CMS letter specifically notified Plaintiff of Medicare noncompliance, Dkt. No. 1 at ¶¶ 6, 11-12, 20-21, 29. Whether or not Medicaid also influenced the penalty, a noncompliance determination is at the heart of this matter.

Importantly, "[a] claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law." *Retina Grp. of New England, P.C.*, 72 F.4th at 496 (quoting *Midland Psych. Assocs. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998)). Whether the challenged penalty is construed to arise under Medicare or Medicaid, this case is further distinguishable from *Avon* because it would involve a noncompliance determination under either statute. Moreover, the penalty would arise from the same incident under either statute, and the administrative review process is already in motion. Accordingly, even if Plaintiff's complaint contained a Medicaid claim, it would be wholly intertwined with the Medicare claim because their factual bases are identical. *See id.* (looking for a "sufficient factual connection" between multiple claims to determine whether they were inextricably intertwined). As a result, simply

13

amending the complaint to allege Plaintiff's participation in Medicaid would not create any justifiable reason to allow Plaintiff to use Medicaid to escape Medicare's jurisdictional requirements.

There exists a "narrow" exception to the Medicare jurisdictional rule where its application "would not simply channel review through the agency, but would mean no review at all." *Id.* at 497 (quoting *Ill. Council on Long Term Care, Inc.*, 529 U.S. at 19). However, the exception does not apply here because, as already discussed at length, judicial review is available in the Second Circuit if Plaintiff wishes to appeal the administrative decision.

Finally, even if the Medicaid Act were a viable way for Plaintiff to circumvent the jurisdictional provisions at issue here, amending the complaint to allege Plaintiff's status as a Medicaid-participating facility would not remedy the apparent lack of material factual dispute that causes "Plaintiff's Seventh Amendment argument [to] fail[] at the outset . . . ." Dkt. No. 17 at 14. Regardless of whether Plaintiff turns to Medicare or Medicaid, the proposed amendment does not include any new allegations that would raise a dispute of material fact triable by a jury.

Accordingly, the Court finds that Plaintiff's proposed amendment is futile, and the cross-motion for leave to amend is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 22) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for leave to amend the complaint (Dkt. No. 24) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 20, 2026
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge